Next up, we have case number 24-12966, Kylie McKenzie v. United States Tennis Association Incorporated Good morning, and may it please the court, Amy Upshaw on behalf of the appellants. I'd like to reserve four minutes of my time for rebuttal. In this case, the district court took the extreme step of holding as a matter of law that USTA breached the standard of care. That was wrong, and I'd like to make three key points. First, the record was replete with facts showing that USTA exercised reasonable care. Granting judgment in favor of plaintiff and prohibiting the jury from evaluating those facts is a clear error of law. Second, the record in fact shows that plaintiff could not establish key elements of each claim, and the court erred in holding otherwise. The district court's ruling that Vitalia's knowledge could be imputed to USTA because she was a mandatory reporter under the Safe Sports Center's code was wrong three times over, and the district court's ruling that an entity fails to exercise reasonable care unless it has an employee constantly monitoring a coach's interactions with adults has no basis in any evidence and is in conflict with Florida law. Can you focus on the negligent supervision claim? I'll take it your third point, if you can focus on that one. Sure. Let me start with the negligent retention claim, which turns on two key elements. One is whether there was knowledge, and two, whether that knowledge indicated that Aranda was unfit to be a coach. The evidence here is that there was no duty for Vitalia to report the incident that she suffered in 2014 to USTA at all. The district court relied on the Safe Sports Center's code's mandatory reporting obligation, but if you look, that runs to the Safe Sports Center. That doesn't run to USTA. It didn't just rely, though, it seems to me, on the association level or the organizational level. It also relied on the rules that were set up for employees of the USTA itself, which adopted the safe sport standards. Is that right? I don't understand that to be the district court's position. I think the district court at one point noted that she was a manager and so decided that perhaps for that reason alone, the knowledge could be imputed, but that's not right. Let's take what the district court did out of it for a second, because the issue for us is de novo as a matter of law. The question, as I understand under Florida law, is where something is within the scope of your employment and you have the duty to do that, then it can be imputed if you didn't do what you were supposed to do within the scope of employment. If the question is, the scope of your employment is, you're supposed to report any violations of these standards, wouldn't that be within the scope of Ms. Battaglia's duty at that point? As I understand Florida law, the relevant question is whether this was in the sphere of authority. That's the Chang case, that's the Anderson v. Walfall case. I don't think plaintiff even argues that Battaglia had authority over Randa, that she could have fired him, that she could have imposed some sort of extra supervision on him. The question is whether she should have reported up to someone with authority. I don't think there's any evidence in the record that she had a mandatory reporting duty to report up to someone about the violation of the 2014 incident. Don't the safe play policies require, quote, anyone with credible information, end quote, to, quote, report misconduct, end quote, that is contrary to the safe sport code? I believe there is a permissive reporting standard in the USTA safe play policies. I do not think there is a mandatory reporting obligation to USTA. The only mandatory reporting obligation... Let's assume it's a may for a second. Let's assume it's not a shall. Isn't that still within the scope of one's duties if one is required to report a violation? In other words, employees should report, not required, but should report violations of the code as part of the safe play, which applies to just the association level. I disagree with that. I think for it to be a duty, it has to be something that you have to do and not just something that you can do. I don't know if it's a duty. Here's what I understand Florida law to be, and correct me if I'm wrong, that in legal terms, that knowledge or notice that an agent acquires while acting within the course and scope of his or her authority is generally imputed to the principal. Is that a fair statement of law? I think that's right. So that's the authority angle to that. But again, I don't think even the plaintiff argues that sort of Battaglia had authority over Aranda. That's clearly belied by the record. She testified she does not have authority over Aranda. She does not have authority over any coach in the... Could you answer this to me? I mean, one of the weird things about this argument from the plaintiff's perspective, I feel like, is this incident happened at a bar after hours. Where's the authority aspect there? I think that's a good point. This is a totally different context. I don't think that she had any authority... Does the safety policy apply to that? I don't know. I couldn't tell. I don't, you know, plaintiff's burden to come in here and establish that her authority would require her to report that sort of incident. I agree with you. I don't think that there's anything in the record that supports a reasonable reading that she would be required to report that incident that happened to her in 2014. And I do think it's important to take a step back and look at what is the heart of plaintiff's claim here. She said that she didn't... I mean, she testified, right? And she said that she had no reason to think from that incident that he would do anything with, like, a student. That's exactly right. It never would have crossed her mind. And so, again, if you could just take a step back and try to figure out what is it that plaintiff says that USTA did wrong here. It's really only two things. One, Batali did not report that 2014 incident, but she had no obligation to report it. And two, USTA did not have an employee who was constantly monitoring coaches' interactions with adult athletes. But that is not the standard of care. Even for students in schools, Florida says there is no obligation to constantly monitor all movements of all students all the time. That's the Kazanjian case that we cite in our brief. If you look at their cases, the Nova Southeastern case, the standard of care there for an adult student is that you have to exercise reasonable care in assigning someone to an internship. There is no requirement that you actually go along with that person to the internship or have cameras to constantly monitor what's going on. The only expert in this case testified that video surveillance is not the standard of care. And remember, the burden is on the plaintiff here to establish what the standard of care is and to establish that USTA breached it. And there is just no evidence. There's no policy. There's nothing in the record that establishes that USTA breached the standard of care. I mean, I thought there was. I thought the district court's reasoning was something like this. I mean, there's the policy that says that there should be the rule of three, right, for teens, and that the plaintiff was 19 years old. And so the rule of three applied to her. And the district court sort of said that rule of three policy is the standard that must apply. So let me walk through that. There's one. There's the Safe Sports Centers Code. And I think everyone agrees that USTA fully complied with the code. That's the code created by the entity tasked by Congress to set the standards that should apply to prevent abuse towards athletes. Full compliance with that. There's the internal safe play policies, which have this rule of threes. And in that rule of threes, there's uniform testimony from USTA that that applied to minors. But even if you disagree with that, what it says is that there needs to be that a teen and a coach need to be in an observable area. And they were in an observable area. We had expert testimony to that effect. But even plaintiff herself, she testifies on the day of the assault. Ola Malquist was there for the first part. She was hitting with another player for a lot of the practice. She was asked, you know, weren't there maintenance workers, weren't the other adults around? And she says, maybe. And the testimony is that there were other people, there were other adults walking around all the time. There were trainers, there were coaches, there were athletes. And so even if you think the rule of three applies here, it was not violated because there were other people around. And that's why neither plaintiff nor the district court actually rely on the rule of threes. And they both say it's not enough that there were other adults around. It's not enough that there are maintenance workers, that you can't delegate this duty to supervise to a maintenance worker. But that's not what the rule of three requires. So at the end of the day, the negligence claim, it really is this, that you need to have someone at USTA constantly monitoring coaches' interactions with adult athletes. And there's nothing in the record that supports that being the standard of care. Can you show me where the definition of sexual misconduct is limited to on- or off-campus activities? I'm not aware of a limiting principle there. I think that the limiting principle that we have is that it is about a misconduct towards athletes and towards minors. Show me where in the definition of sexual misconduct. I agree with you. You have not argued a limiting principle about on- or off-campus. But can you show me where there's one with regard to athletes for the definition of sexual misconduct in the safe play rules? So I think the best place there is actually in the statute 36 U.S.C. I'm talking about the safe play rules. So these are the rules that govern employees of the USTA. So these are the rules that are promulgated by the Safe Sports Center? Absolutely. But there's also independent rules. So like there's- here's the floor of what the statute requires. And then here is where USTA has set it. So looking at where USTA has set it, can you point to me where in there it's limited to athletes or not for the definition of sexual- I apologize for quibbling, but I just want to make sure that we're talking about the same thing. If you're talking about the Safe Sports Center's code, which I think is- Docket entry 225-4 at page 3. That's what I'm talking about. I believe that's the Safe Sports Center's code. So that's promulgated by the Safe Sports Center? No, this is the safe play. This is USTA safe play conduct policies and guidelines. So, okay. So we're not talking about the Safe Sports Center code, just the USTA safe play policies that that's misconduct. I don't have a place there, but I don't think there's a reporting obligation. And so if you're asking whether there's a reporting obligation- So I understand you used the term obligation. You used that before, but if you look at page 11 of that same docket entry, it says the USTA asks that anyone with credible information that is firsthand knowledge or reliable information from a knowable third party report misconduct, maltreatment, or behavior that conflicts with these policies, including the sexual misconduct policies. How is that not a duty that inures to everybody who is covered by this? I think that if you put that in contrast to the Safe Sports Center, which sets up a mandatory duty, you see the difference. One is an ask and one is a duty. Counsel, statute set floors for conduct. Everyone has the ability to go over that. Where one goes over that, and those are the duties with which one operates for employment for where those duties have been set. Why is that not applicable to employees in general? Again, I think when something is permissive, it's not necessarily a duty. And then at the least, the fact that she was a victim puts us in a totally different category. Victims are never required to report their abuse. May it please the court. My name is Amy Judkins. I'm here on behalf of the plaintiff appellee, Ms. Kylie McKenzie. Despite the framing of the defendant, this case is actually quite simple. The district court ruled at summary judgment that the USTA owed Ms. McKenzie a special relationship duty to supervise and monitor her practices while on USTA's campus. With that duty established prior to trial, the USTA's own witnesses unanimously took the stand and testified that they did not supervise and monitor her practices. Okay. That makes no sense to me. Okay. There was a coach involved in the practice, right? Yes, Your Honor. Your argument isn't that they didn't supervise the student. Your argument is that they didn't supervise the coach. Your Honor, we argue that there was no supervision for either Ms. McKenzie or the coach, which USTA had constructive knowledge was a dangerous coach. Was the coach employed by USTA? Yes. Then he was the supervisor. No, Your Honor. He wasn't. He was not supervising the student. No, that's not enough. When you have an epidemic of sexual misconduct in sports occurring between athletes and their coaches. So there has to be another supervisor who's, so there has to be two supervisors supervising the student. The rule of three, which the USTA's own policy requires either another adult or another athlete. So the rule of three would limit instances in which- So with the rule of three, who's supervising? The Florida cases say that the school owes a duty to supervise the student during athletic activity. The USTA had a coach there to supervise the student. A coach that the USTA had constructive knowledge was a perpetrator. Okay. And had previously committed sexual misconduct. I guess that seems like a different argument to me. It seems like your argument that somehow there's a rule from Florida law that you have to have a supervisor supervise the supervisor is not what those cases stand for. So Your Honor, the argument is that the coach is the dangerous factor of part of the coaching relationship. The guidance and the evidence- What if there were another coach there, so you had two coaches? That would satisfy the rule of three. Why? Why wouldn't you need three coaches to supervise the second coach? The second coach could commit a sexual assault. The both coaches could. So I agree, Your Honor. At some point, it's not just a domino where you need more and more coaches. I think what Judge Brasher is driving at is, and I have to say, I tend to agree with this, you seem to be on stronger footing on the negligent retention claim than on the negligence claim. Because the negligent retention claim gets to where you answered, Judge Brasher, which is they knew that they had a predator there. And so then it gets to whether the knowledge and arguments that your opposing counsel was. But I have another problem with the negligence claim, and not just what the Florida cases say. You started off, the first sentence here was, the district court ruled at partial summary judgment that the duty was X. I don't know that I read the order that way. The bottom line holding, or the bottom line ruling, I'll cite to page 27 of Docket Entry 164, is, in this case specifically, the special relationship imposes on defendants only a duty of reasonable care to protect players and their training program from sexual abuse by their coaches, a foreseeable harm. There's no duty to supervise and to monitor. That's a standard of care issue. The duty was set by, you have a duty, normally a third party doing something, a third party committing a harm would separate the duty from the association from the player. But here, because of the special relationship, there is a duty. The next question is, what is the standard of care? And that seems to me to be a disputed issue. Because they have expert testimony, whether right or wrong, which is the standard of care is simply the safe sport code. And you put on evidence which says, you have these rules and you didn't comply with your own rules. That seems to be a disputed issue. And I just, I think the negligence claim is harder. But the supervision claim, on the other hand, really just relies on, did they know about this guy? And did they not have somebody looking after him, or let these two people alone together without someone looking after them, right? Yes, Your Honor. And quickly on the negligence claim, and then I will turn to negligence supervision based on your comments. But the district court also said that, I mean, and it was a lengthy order. And the order was granting personal summary judgment that there is a special relationship duty, which under Florida precedent requires supervision. The district court also said, and this is on page 27, and I quote, defendants had a duty to limit But counsel, the problem is, you're right. But the problem is that isn't, there needs to be the rule three, and there needs to be constant video monitoring. Those are different things. That's the standard of care that that duty requires. And that is an issue of fact under Florida law, which seemed to be disputed. And so in my mind, I question what the district court did by just saying, I grant the summary judgment on this. There's this duty. You have these rules you didn't follow, and that's it. And ignore the expert testimony in the context of the negligence claim. But I think that's different from the negligence supervision claim. Which I will turn to now, Your Honor. So the negligence supervision and retention claim requires knowledge of the corporation. That knowledge can be either actual or constructive knowledge. And in this case, the judge ruled that there was not constructive knowledge based on the imputed knowledge of its employee and manager, Ms. Battaglia. The facts that support the imputation of knowledge, the material facts, I should say, were not in dispute. And those facts are that Jessica Battaglia was an agent of the USTA. There is lots of discussion on the scope of Ms. Battaglia's duties. But ultimately, that's not, those issues are not material. She was an agent, and an agent's knowledge can be imputed to the corporation. If that knowledge is material to the corporation and her duties, or if there is a duty to inform the corporation of that knowledge. And we have both of those facts here, and those facts were undisputed. So before we even get into the mandatory reporting requirement, I think it's really important to note that one of the most primary and important functions of the USTA as a national governing body is the protection of athletes. Lauren Tracy, the lead employee, the manager or director of their athlete safety program, testified that it's one of the most important functions of the USTA is to protect athletes. So the knowledge that a coach has previously committed sexual misconduct is a fact that is material to any employee's duties with the USTA. Another fact that is undisputed that I think is important to this issue that we're discussing is Martin Blackman, who was the general manager for the corporation for the USTA, testified that all employees, even, and I quote, admins receive training on athlete protection. So knowledge, even putting aside the mandatory reporting requirement, the knowledge that a coach has the propensity to cause harm to females is material knowledge to the corporation, and that alone can be imputed to the corporation. So they argue in their brief, one of the arguments that they make is that, look, we'll grant you the authority thing, we'll give you all of this. It was still a jury question about whether knowledge of this thing at the bar, we'll call it a sexual assault at the bar, was enough for the company to know that they should have done something about this coach and his interactions with athletes on tennis courts. What about, why isn't that at least a jury question about whether knowing about what he did with a 28-year-old at a bar one night leads to pulling him from tennis courts? Your Honor, so two things. The contextual differences between Ms. Battaglia's abuse and Ms. McKenzie's abuse is simply not relevant to the imputation of knowledge. It is relevant. That's what I'm saying. Give you the company, let's just assume that in a counterfactual world, the company had sat down and said, okay, we had this, you know, they were drinking at night at this bar, they were dancing together, and he did this thing. She reported it. We've got to decide what to do. Your position is what they should have done is said, you're fired, right? Let's say they didn't do that. Let's say they said, okay, you know, we're not going to do that. We're going to give them some training, and then we're going to wait a couple of years and see what happens. And he does this thing with this student. Wouldn't that be a jury question, whether they had handled that the right way? Well, Your Honor, both Malquis, who was the head of women's tennis and a supervisor of Coach Aranda, and Kathy Rinaldi, who was the current supervisor of Coach Aranda, said that if they had known that he had sexually assaulted a woman previously, that he would not have been hired. So I think that to the extent that there's an argument that the corporation would not have done something differently is belied by the record. More importantly, the question of whether these contextual differences that we're talking about, Jessica Bataglia being an employee and not an athlete, Jessica Bataglia had been drinking and at a bar. The question of whether that made it foreseeable that Ms. McKenzie would be abused in a similar way was a question that was directly presented to the jury. And I'm going to quote from the jury instructions, which asked, was it reasonably foreseeable from Coach Aranda's prior inappropriate sexual touching of Ms. Bataglia and taking into consideration all of the evidence presented that Coach Aranda could cause the same type of harm sustained by Ms. McKenzie? So this question was not removed from the jury. It was explicitly asked of the jury. And of course, the jury just answered that question, yes, it was reasonably foreseeable. So all of these facts that we're discussing about the contextual differences between the two abuses was evidence that was repeatedly presented to the jury. It was argued extensively in closing arguments. I was not aware of that. Can you explain how that is that the district court granted some judgment as a matter of law on? Yes, that's a great question. I'd be happy to discuss that. So the foreseeability analysis, whether something is foreseeable under the Florida Supreme Court precedent in the McCain case, which is Florida's seminal case discussing foreseeability and negligence claims, says that foreseeability is relevant to the causation element of negligence. So in this case, the district court ruled at summary judgment there was a legal duty. It ruled at judgment as a matter of law that there was a breach. What it sent to the jury were questions related to causation and questions related to damages. So the jury was asked specifically whether these contextual differences made it unforeseeable to the USTA that Ms. McKenzie would be harmed. So this is not an instance where the jury was robbed of the opportunity of evaluating those differences. In fact, this jury instruction specifically asked that very question. The problem is the USTA just disagrees with the jury's ultimate conclusion. So you're saying that on the verdict form when they answer those first two questions, yes, that in sort of embedded in their answer to those questions, is this foreseeability issue? Yes, the first question was related to causation and the quote that I just read to you was the jury's instructions on how to resolve the causation question. And it did ask specifically whether the previous sexual touching of Ms. Battaglia and taking into consideration all of the evidence, including all of the evidence we're talking about right here, all of the evidence that was argued to the jury extensively in closing arguments. And that argument was, is that the USDA could not have known that a man who abused a coworker would also abuse an athlete. And I think it's clear by answering the question, yes, the jury disagreed with that argument. I also want to... Just so I unpack that a little bit so I understand. So if the first incident had been, let's say, a brutal robbery, a home robbery, A, that would, knowledge would have been imputed because it's a significant violent act to the corporation if somebody knew about it and didn't report it. And secondly, it would have been a breach to have somebody like that because they can act violently. But because that's so different, that may not have been the legal cause of injury in this particular case if somebody had done that, right? Right. And so the jury would have to decide that question. That's correct. The only difference between this case and the one I just described is that the incident here was a sexual assault, which was very, very close to what happened in facts that were very close to what actually happened here, right? That's correct. And Ms. Battaglia herself even testified that the incidents and the inappropriate touching was similar, both what she experienced and Ms. McKenzie experienced. And again, I do want to circle back to the fact that every USTA employee that was asked this question and that had the authority to hire or fire Coach Aranda testified that had they known that this coach had behaved this way to any woman, regardless of age, regardless of position, that he would not have been hired and he certainly would have been fired. So I think that the argument that they couldn't have known or they wouldn't have done anything differently is belied by that testimony. What about, I cut you off when you were going to talk about the authority issue. So it seems like your argument is that because of a mandatory reporting requirement, it's sort of inherently within your authority. I guess, where is that? How does that connect up with Florida law? The way I read Florida law is it says, look, if you're, is within your sphere of authority, right? So you're a lawyer at a law firm, you know, you've got associates that you manage, you've got paralegals that you manage. But if you see someone, you know, smoking marijuana in the parking lot, you know, that's not within your sphere of authority to sort of like do something about that necessarily. It seems like you're saying if there's a mandatory reporting of something, then it makes it necessarily within your authority as an employee? That is one legal basis for the imputation of knowledge, Your Honor. And I, I think we can't talk about this mandatory reporting requirement without acknowledging the function of the USTA and especially, specifically the function of protecting athletes. And there was also extensive evidence. I guess here's, here's the, I mean, not really a concern, but just sort of an implication, I guess of that is I'm sure, I mean, most employers have some kind of sexual harassment policy that make, you know, that says like, look, you're supposed to report everything. You know, whether it happens at the workplace, whether it happens, you know, no matter what, you hear it. And so if we adopt your rule, are we basically putting employers, are we holding employers liable for sort of anything that their employees know and they don't report? No, Your Honor, I don't believe a holding would go so far as to do that, especially to just any employer. The United States Tennis Association has a very specific role as the national governing body of tennis. It's something that they, it's a position that they applied for, and it's a position that was bestowed upon them. And that position carries with it the weight of protecting athletes. The jury was presented with nearly a decade of documents that outline the high risk of sexual misconduct in sports. It wasn't just a risk. It was a crisis of sexual misconduct. And the United States Tennis Association is the organization, as Lauren Tracy testified, that's most important function is to protect these athletes. So knowledge that its employees or its coaches are sexual predators or have a history of sexual misconduct is important to every single USTA employee, and therefore can be imputed to the corporation. The mandatory reporting requirement simply bolsters that analysis, because not only is it important to protect athletes, but these employees, regardless of their position, are trained on their reporting duties. Malquis, who's been working with the United States Tennis Association for decades, says that the duty goes so far as to require them to report even suspicions of sexual misconduct. So the reporting requirement was there. It's been there for decades. And that allows the district court, as a matter of law, to impute Ms. Battaglia's knowledge to the corporation. Thank you. Thank you. Ms. Upshaw, rebuttal. Thank you, Your Honors. A few quick points on the negligent retention claim. I understood my friend on the other side to say that it depends on whether the knowledge was material to her duties. At least that's a question of fact. There's evidence that this is not material to her duties. The question of whether she had a duty to report, you know, we think there wasn't a duty to report. What was her testimony on that? What did she say about whether it was material to her duties? So she was talking about the sphere of authority, that she had no authority over Randa. She had no authority over the player development coaches, that her role was limited to preparing for events, things of that nature. So she didn't have any role over coaches and how they interacted with players. The duty to report, I mentioned this briefly, I also do think that you need to take into consideration the background rule that victims are not required to report. You know, I think that the idea that a victim of sexual assault has a choice, and the choice is either you have to recount and relive that sexual assault, or you need to quit your job, is not one that we ever put to victims. And so again— She didn't dispute that she was subject to the safe play rules, though, did she? My understanding is that the imputation issue was decided at summary judgment based on the safe sport code, and so I don't think that this issue was really presented. I don't think plaintiff's theory here was that it was the safe play policies rather than the safe sport center code that imposed a mandatory duty to report. Again, at the very least, we think you should reverse the district court on its decision and send it back to consider whether there are these separate safe play reporting obligations that would have applied to her, but we don't think they do. And we think that's, you know, we think that's clear as a matter of law, but at least that's a disputed fact question that should go back, and the jury should consider that. That's why I asked the question, what's the disputed fact? Did she say, I'm not subject to these rules, or I'm not subject to the sexual misconduct rule? So I think the rule is that the victims are not required to report their assault, but that's what Dr. Apple— Sorry. Sorry. Did she testify to that, Ms. Battaglia? So I think Ms. Battaglia testified that the reporting obligation, as she understood it, was just about reporting misconduct towards athletes and towards minors. That was her testimony. Again, I think all of this was done mostly in the safe sport code conduct, and so we'd at least ask that you send it back for those factual questions. The Supreme Court in Reeves says that issues that go to credibility and weighing the evidence, all of that means that judgment as a matter of law is inappropriate. So Judge Brasher, you pointed out that there's at least the fitness question that is also a fact question. My friend on the other side suggested that this is something that the jury was able to consider, but that's wrong. If you look at Instruction Number 9, this is on page 76 of the Supplemental Appendix, the court says that since USTA knew of Coach Aranda's sexual misconduct in 2017 before Coach Aranda touched Ms. McKenzie, the USDA knew of information that indicated his unfitness to perform the duties of a coach at the USDA training facility. The jury was told to accept that as a matter of law. They had no ability to weigh the evidence and decide whether Coach Aranda was fit or not. So, you know, our position here is that the two things that plaintiffs said USDA did wrong, that Petalia did not report and that there wasn't constant monitoring of coaches' interactions with adult athletes. Neither of those are the stuff of negligence at all, but at the very least, we think they're important fact questions that need to go back to the jury to decide in the first instance if there aren't any further questions we would ask that the court reverse. Thank you, counsel.